

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN KORN,**<br>    **Plaintiff,**<br><br>    v.<br><br>**EMERY KERTESZ, III and**<br>**SHEILA KERTESZ,**<br>    **Defendants.** | **CIVIL ACTION NO. 06-5340**<br><br>**FILED**<br>OCT 2 2 2007<br>MICHAEL E. KUNZ, Clerk<br>By_____Dep. Clerk |

## MEMORANDUM AND ORDER

**Katz, S.J.**                                                    **October 22, 2007**

Before the court are "Defendants' Motion for Summary Judgment"
(Document No. 35), and Plaintiff's response thereto (Document No. 45). For the
following reasons, Defendants' motion is denied, but Plaintiff may only seek
contribution for $150,000.00.

## I. Background

Plaintiff Justin Korn ("Korn") was the Chairman and majority shareholder
of General Video Corporation ("GVC"), owning 68.42% of GVC's stock.
(Compl., Document No. 1, ¶¶ 4, 19.) Defendant Emery Kertesz ("Kertesz") was
the President of GVC, responsible for GVC's daily operations, and owner of the
remaining 31.58% of GVC's stock. (Compl. ¶¶ 4, 20.) Defendant Shelia Kertesz

("Mrs. Kertesz") is the wife of Defendant Kertesz, and was employed in the accounting department of GVC.  (Compl. ¶ 4.)

GVC was incorporated on October 16, 1991, and was in the business of designing, manufacturing and selling specialized audio and video equipment. (Compl. ¶ 18.)  In 1997, GVC approached Lafayette Ambassador Bank of Lehigh Valley, Pennsylvania ("the Bank"), seeking funds to finance its working capital needs.  (Compl. ¶ 20.)  In response, the Bank extended GVC a two million dollar secured line of credit.  (Defs.' Mot. Summ. J. Ex. B at 1)  As a condition of that line of credit, the Bank requested that Korn, Kertesz and Mrs. Kertesz personally guarantee GVC's indebtedness up to a limit of $500,000.00.  (Defs.' Mot. Ex. B at 2.)

On September 26, 1997, the Bank and the parties signed all the necessary documents for GVC's two million dollar line of credit, including one personal guaranty by Korn (Defs.' Mot. Ex. F at 4-6) and another by Kertesz and Mrs. Kertesz (Defs.' Mot. Ex. F at 1-3).[1]  This line of credit was modified on April 7, 1998, when the Bank extended GVC additional credit in the form of a $250,000.00 secured overline of credit. (Defs.' Mot. Ex. H.)  On May 8, 1998, the terms of the

---

[1]Other documents signed for the September 26, 1997 loan transaction include the Line of Credit Note and Agreement (Defs.' Mot. Ex. C); a guaranty by GVC (Defs.' Mot. Ex. F); and an open-end mortgage accompanying GVC's guaranty (Defs.' Mot. Ex. E).

original line of credit were again amended to reflect an increase in the principal

sum due under the line from $2 million to $3 million.  (Compl. ¶ 24.)

Korn and Kertesz signed a letter of indemnity dated November 12, 1998.

(Defs.' Mot. Ex. I.)  The letter referenced a "certain Guaranty, dated as of May 8,

1998 made by you to Lafayette Bank."  (Defs.' Mot. Ex. I.)  The letter stated that

GVC would indemnify Kertesz for all amounts he actually paid under the

Guaranty, and to the extent that GVC failed to indemnify him, Korn would

indemnify Kertesz under the Guaranty.  (Defs.' Mot. Ex. I.)  Korn alleges that prior

to May 8, 1998, Kertesz had never requested nor had Korn provided any letter of

indemnity.  (Compl. ¶¶ 25-27.)  Moreover, Korn alleges that the letter of indemnity

was provided in connection with the May 8, 1998 loan document only.  (Compl. ¶

28.)

However, Defendants allege that they were adamant in not wishing to sign

the initial personal guaranty on September 26, 1997.  (Answer, Document No. 11, ¶

22.)  Defendants claim that Plaintiff verbally agreed to indemnify and guarantee

their portion of the Note.  (Answer ¶ 22.)  Defendants allege that on April 7, 1998,

when the Bank first extended and increased GVC's credit line, Korn had already

extended his agreement to indemnify Defendants.  (Answer ¶ 23.)  Defendants also

claim that on that day, they asked Korn to place his agreement to indemnify them in

3

writing, though he failed to do so until November 12, 1998. (Answer ¶ 23, 25.)

On August 31, 2000, in connection with an extension of GVC's financing, Korn agreed to increase the limit of his personal guaranty to $800,000.00. (Defs.' Mot. Ex. L; Ex. M; Ex. N.) By its terms, this line of credit, as extended, had an expiration of December 31, 2000. (Compl. ¶ 35.) Korn and Kertesz agreed with the Bank to extend the maturity of GVC's line of credit once on February 16, 2001 to June 30, 2001, and again on March 9, 2001 for an additional seven months. (Compl. ¶¶ 38, 39.)

On August 1, 2001, the Bank declared GVC in default, and expressed its intent to pursue its remedies, including enforcement of Korn's personal guaranty. (Defs.' Mot. Ex. S.) The Bank confessed judgment against Korn on August 31, 2001 in the amount of $831,461.59 and initiated litigation against Korn in New York state court seeking to enforce its judgment. (Compl. ¶ 41.) The Bank also successfully forced a sheriff's sale of a portion of GVC's personal property and made attempts to force the sale of GVC's real property, scheduling that sale for June 13, 2002. (Compl. ¶ 42.)

On June 11, 2002, the Bank sent a letter confirming their agreement with Korn to cancel the sheriff's sale of GVC's real property if Korn (1) as a guarantor of GVC's loan, personally paid the Bank $150,000.00 to be applied against GVC's

4

outstanding indebtedness; (2) paid certain outstanding real estate taxes with respect to GVC's real property; and (3) agreed not to contest the validity of his personal guaranty, which would be reduced to $400,000.00. (Defs.' Mot. Ex. U.)  Pursuant to this agreement with the Bank, Korn paid $150,000.00 to the Bank on June 12, 2002; $20,132.36 in outstanding real estate taxes on June 17, 2002; and signed a Non-contestability Agreement, agreeing not to contest the validity of his personal guaranty of $400,000.00 on August 9, 2002. (Compl. ¶44; Defs.' Mot. Ex. V.)

Ultimately, the Bank, Korn and Kertesz signed a Settlement Agreement, effective as of May 6, 2003, in which the Bank agreed to satisfy the judgments against Korn, Kertesz and GVC after the completion of the sheriff's sale of GVC's real property. (Defs.' Mot. Ex. W at 2.)  Moreover, the Bank agreed to release Korn and Kertesz, and return their guaranties. (Defs.' Mot. Ex. W at 2-3.)

On December 6, 2006, Korn filed a complaint seeking contribution from Kertesz and Mrs. Kertesz in an amount equal to their proportionate share of $170, 132.36, the amount he paid under his personal guaranty, together with appropriate interest. (Compl. ¶ 51.)  On April 9, 2007, Defendants filed their answer, including counterclaims based upon Korn's refusal to indemnify Defendants.  The counterclaims include fraud, breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, and loss of consortium. (Answer ¶¶ 66-

107.) Each of the six counts seeks an amount in excess of $75,000.00. (Answer ¶¶ 78, 83, 88, 95, 105, 107.) However, the parties have agreed to the dismissal without prejudice of Count V, intentional infliction of emotional distress (Order, Document No. 23, May 25, 2007); Count IV, breach of fiduciary duty; and Count VI, loss of consortium (Order, Document No. 29, July 16, 2007).

Defendants now move for summary judgment with respect to Plaintiff's claim of contribution only.

## II. Standard of Review

A summary judgment motion should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact is in dispute, *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986), and the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *see also Matsushita*, 475 U.S. at 587.

Once the moving party has carried its initial burden, the nonmoving party

6

"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the moving party on that issue, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. Discussion

Defendants are not entitled to summary judgment on Korn's claim for contribution, as there are genuine issues as to material facts, or they are not entitled to judgment as a matter of law. Under current Pennsylvania law, there is a remedy of contribution under which Korn may recover. Defendants need not have agreed to indemnify Korn for him to recover contribution. Moreover, Defendants' obligation under their personal guaranty to the Bank has not been discharged. However, Defendants have established that as a matter of law, only Korn's payment of $150,000.00 would be subject to contribution, and not the $20,136.32 he paid in outstanding real estate taxes.

### A.    Pennsylvania law governs this dispute.

As this court sits in diversity, it must first apply the choice of law principles

of Pennsylvania, the forum state, to determine what law governs this dispute.

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-7 (1941).

In Pennsylvania, "choice of law provisions in contracts will generally be

given effect." *In re Allegheny Intern.*, 954 F.2d 167, 178 (3d Cir. 1992) (*quoting*

*Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989)).  Here,

provision 11 of the guaranties signed by each of the parties provides that "All

issues arising hereunder shall be governed by the law of Pennsylvania."  (Defs.'

Mot. Ex. F. at 2, 5.)  As this dispute arises out of the guaranties signed by the

parties, Pennsylvania law is controlling.

### B.    Current Pennsylvania law provides a right to contribution under which Korn could recover.

Korn can recover contribution under current Pennsylvania law.  Defendants

argue that no recovery may be had because Korn and Defendants are not joint tort-

feasors, and because there is currently no right to contribution between co-sureties

under Pennsylvania law.

However, it is actually irrelevant that Defendants and Korn are not joint-

tortfeasors.  Defendants argue that the right to contribution is statutory and

8

controlled by the Uniform Contribution Among Tort-Feasors Act ("UCATA").

Yet, the purpose of this act is "to respond to a specific need in the law of torts."

*Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989). Thus, it does

not apply to this case which sounds not in tort, but rather in contract. Hence, it is

immaterial whether or not Korn and Defendants are joint tort-feasors, as this would

only matter if the UCATA applied.

Defendants also argue that when the Pennsylvania legislature repealed 13

Pa.C.S.A. § 3606, it "eliminated the statutory law governing rights to contribution

among sureties, thereby eliminating the right to contribution." (Defs.' Mem. Supp.

Summ. J. 12.) However, it is well-settled that "when an act embodying in

expressed terms a principle of law is repealed by the legislature, then the principle

as it existed at common law is still in force." *Schelin v. Goldberg*, 146 A.2d 648,

651 (Pa. Super. 1958); *see also* 1A SUTHERLAND STATUTORY CONSTRUCTION §

23:34 (6th ed. 2007); 73 AM JUR. 2d STATUTES §271 (2007). The doctrine of

contribution "rests on principles of equity and natural justice...it is an attempt by

equity to distribute equally among those who have a common obligation, the

burden of performing that obligation." 12 WILLISTON ON CONTRACTS § 36:14 (4th

ed. 2007). Thus, as contribution is based in equity, even after the repeal of 13

Pa.C.S.A. § 3606, it continued to exist as it did in common law, prior to the

9

statute's enactment.

Hence, the right to contribution does exist in Pennsylvania law, and Defendants' arguments for summary judgment on this basis must fail.

## C.   Korn's Lack of an Indemnification Agreement with Defendants Does Not Bar Contribution.

Korn's right to contribution does not require an agreement with Defendants to indemnify him. First of all, indemnification and contribution are two distinct concepts. The right of indemnity "belongs to a person who has been compelled to pay what another should be forced to pay in full." 16 SUMM. PA. JUR. 2d COMMERCIAL LAW § 7:45 (2007). In contrast, the right to contribution "arises only when the payor has contributed more than his proportionate share and is limited to the proportionate share which the other should pay." RESTATEMENT (FIRST) OF RESTITUTION § 82, cmt. b (1937); *see also Malone*, 83 A. at 607.

Moreover, contribution is "bottomed and fixed on general principles of natural justice, and does not spring from contract." *Eiffert v. Pa. Central Brewing Co., et al.*, 15 A.2d 723, 727 (Pa. Super. 1940) (*quoting In Armstrong County v. Clarion County*, 66 Pa. 218, 221 (1870)). This statement "does not mean that contribution cannot be based on contract, but merely that it may arise independently of any contract." *Id.* Persons engaged as "co-obligors, in the

absence of express understanding otherwise are held to have dealt with [contribution] as an implied term in their relations." *Greenwald v. Weinberg*, 157 A. 351, 353 (Pa. Super. 1931).

Thus, by not agreeing to indemnify Korn, Defendants are not accepting full liability for any damages or losses he may sustained. However, the lack of such an agreement has no effect on Defendants' obligations as co-obligors to contribute. Moreover, with regards to Korn's agreement to indemnify Defendants, Defendants have failed to show that there is no genuine issue of material fact in dispute. Defendants claim that the indemnity agreement should apply to the personal guaranty they signed on September 26, 1997, as Korn verbally agreed to indemnify that guaranty and he extended that indemnification to the May 8, 1998 loan. (Answer ¶ 23.) However, Korn argues that as stated in the agreement, it should only apply to the May 8, 1998 loan documents. (Compl. ¶ 28.) Thus, as there is a genuine issue of material fact, Defendants are not entitled to summary judgment on this ground.

### D.   Defendants' Obligation Under Their Personal Guaranty Has Not Been Discharged.

Defendants argue that Korn's unilateral modification of the debtor-creditor relationship with the Bank operated as a matter of law to discharge their obligation

under their personal guaranty. (Defs.' Mem. Supp. Summ. J. 15.) However, in order for a material modification in the creditor-debtor relationship to completely discharge the obligation of a surety, it is required that (1) the one who's obligation is being discharged is a gratuitous surety, *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999); (2) the modification was made without the surety's consent ,*Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. 1986); and (3) that modification "has substantially increased the surety's risk." *Id.*

Defendants do not assert that Korn's actions ever "substantially increased" their risk beyond the $500,000.00 of their original personal guaranty signed September 26, 1997. (Defs.' Mot. Ex. F.) Thus, within the context of summary judgment, this court must infer that Korn's action did not substantially increase the risk of Defendants at any time. *Pennsylvania Coal Ass'n*, 63 F.3d at 236. Hence, Defendants cannot establish that the obligations of either Kertesz or Mrs. Kertesz were discharged as a matter of law,[2] and summary judgment cannot be granted on this ground.

### E.    Korn is Not Entitled to Contribtuion on the $20,132.36 He Paid in Real Estate Taxes.

---

[2] Defendants' argument fails, because they cannot establish a substantial increase in their risk due to Korn's actions. Thus, the court declines to determine whether or not Korn's actions as a co-surety would qualify as modifications of the debtor-creditor relationship with the Bank, or if either Kertesz or Mrs. Kertesz are gratuitous sureties.

12

Korn seeks contribution for $170,132.36. (Compl. ¶ 48.) However, according to Korn's complaint, only $150,000.00 of that amount did he personally pay to the Bank to be applied against GVC's outstanding indebtedness. (Compl. ¶ 43.) The other $20,132.36 were outstanding real estate taxes owed by GVC on its real property. (Compl. ¶ 43.) The right of contribution requires that "the plaintiffs must have been legally liable to pay, and must have actually paid under compulsion and obligation, that for which both plaintiffs and defendant were equally liable." *S. Sur. Co., et al. v. Commercial Cas. Ins. Co., et al.*, 31 F.2d 817, 818 (3d Cir. 1929). A payment is compulsory if there is "a clear legal duty to pay which might have been enforced by judgment and execution." *Malone v. Stewart*, 83 A. 607 (Pa. 1912). Yet, "where the balance of the debt still remains unpaid, [a] right to contribution does not entitle him to restitution which would bring his loss below that which he should pay if the claim of the creditor were fully discharged." RESTATEMENT (FIRST) OF RESTITUTION § 85, cmt. e (1937). Defendants dispute whether Korn is entitled to contribution on the $20,132.36 paid in real estate taxes.

Defendants argue that neither their nor Korn's guaranty mentions the paying of taxes owed by GVC or GVC Capital, LLC. (Defs. Mem. Supp. Summ. J. 16; Defs.' Mot. Ex. F.) Moreover, Defendants state that "the parties never contemplated any agreement as to contribution or indemnification with regard to

13

monies Korn paid for taxes." (Defs. Mem. Supp. Summ. J. 16.)  In other words, there is no agreement or contract personally obligating either Korn or Defendants to pay the outstanding real estate taxes.

Korn argues that he is entitled to contribution, as he "paid the taxes in his capacity as a guarantor of GVC's debt, and that Mr. Kertesz was involved in the negotiation of the settlement." (Pl.'s Mem. Opp. Summ. J. 13, fn. 3.)  However, neither the capacity in which Korn made the payment nor Kertesz's involvement in the negotiations is sufficient to create a legal duty that could be enforced by judgment and execution.  As noted in the bank's letter to Korn, payment of the real estate taxes was merely a condition of the Bank further extending the maturity of GVC's outstanding indebtedness. (Defs.' Mot. Ex. U.)  In other words, neither Korn nor Defendants had a legal duty to personally pay the real estate taxes.  If the real estate taxes were paid, then the Bank would extend the maturity of GVC indebtedness; if not, then the Bank would move forward with the sheriff's sale of GVC's real property. (Defs.' Mot. Ex. U.)  The Bank could not have forced Korn or Defendants to personally pay GVC's real estate taxes through judgment and execution.  Thus, Korn has failed to come forward with any specific facts proving there was a legal obligation to pay the real estate taxes, or even placing in doubt Defendants' denial of the same.

14

Therefore, there is no genuine issue of material fact, and Defendants are entitled to a judgment on this issue as a matter of law.  Although Korn's claim for contribution will not be resolved at this time, he can now only claim a right of contribution on $150,000.00.

## IV. Conclusion

Pennsylvania law provides a right of contribution that is available to Korn. Moreover, it is not dependent on Defendants having agreed to indemnify him.  As Defendants obligation under their personal guaranty has not been discharged, Korn's claim for contribution will not dismissed at this time.  However, Defendants have carried their burden in establishing that Korn has no right of contribution with regards to the $20,132.36 he paid in outstanding real estate taxes.  Therefore, Korn may only seek contribution for the $150,000.00 he personally paid to the Bank to be applied against GVC's outstanding indebtedness.


An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN KORN,<br>        Plaintiff,<br><br>        v.<br><br>EMERY KERTESZ, III and<br>SHEILA KERTESZ,<br>        Defendants. | CIVIL ACTION NO. 06-5340<br>**FILED**<br>OCT 2 2 2007<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## ORDER

**AND NOW**, this 22nd day of October, 2007, upon consideration of

"Defendants' Motion for Summary Judgment" (Document No. 35), and Plaintiff's

response thereto (Document No. 45), it is hereby **ORDERED** that Defendants'

motion is **DENIED, but Plaintiff may only seek contribution on $150,000.00.**


                                        BY THE COURT:

                                        _____
                                        MARVIN KATZ, S.J.