## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN KORN,**<br>          **Plaintiff,**<br><br>          **v.**<br><br>**EMERY KERTESZ, III and**<br>**SHEILA KERTESZ,**<br>          **Defendants.** | **CIVIL ACTION NO. 06-5340** |

### MEMORANDUM AND ORDER

**Katz, S.J.**                                                    **November 6, 2007**

Before the court are "Plaintiff Justin Korn's Cross-Motion for Summary Judgment" (Document No. 46), and Defendants' response thereto, including a "Motion to Strike Plaintiff's Cross-Motion for Summary Judgment" (Document No. 54). In an effort to avoid any appearance of injustice to Plaintiff, this court declines to strike Plaintiff's motion as untimely. *See King v. Twp. of E. Lampeter*, 17 F.Supp.2d 394, 407 (E.D.Pa. 1998). Hence, Defendants' motion is denied. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## I.  Background

Plaintiff Justin Korn ("Plaintiff") was the Chairman and majority shareholder of General Video Corporation ("GVC"), owning 68.42% of GVC's stock. (Joint Stipulation of Uncontested Facts, Document No. 47, ¶¶ 1-2.

("Stip.")) Defendant Emery Kertesz ("Kertesz") was the President of GVC, responsible for GVC's daily operations, and owner of the remaining 31.58% of GVC's stock. (Stip. ¶¶ 1-2.) Defendant Sheila Kertesz ("Mrs. Kertesz") is the wife of Defendant Kertesz, and was employed in the accounting department of GVC. (Stip. ¶ 4.) Mrs. Kertesz has never owned GVC's stock, nor served as a corporate officer of GVC. (Stip. ¶ 5.)

GVC was incorporated on October 16, 1991, and was in the business of designing, manufacturing and selling specialized audio and video equipment. (Stip. ¶ 6.) In 1997, GVC approached Lafayette Ambassador Bank of Lehigh Valley, Pennsylvania ("the Bank"), seeking funds to finance its working capital needs. (Stip. ¶ 8.) In response, the Bank extended GVC a two million dollar secured line of credit. (Stip. ¶ 9.) As a condition of that line of credit, the Bank requested that Plaintiff, Kertesz and Mrs. Kertesz personally guarantee GVC's indebtedness up to a limit of $500,000.00. (Stip. ¶¶ 10-2.)

On September 26, 1997, the Bank and the parties signed all the necessary documents for GVC's two million dollar line of credit, including one personal guaranty by Plaintiff and another by Kertesz and Mrs. Kertesz. (Stip. ¶¶ 16-9.) This line of credit was modified on April 7, 1998, when the Bank extended GVC additional credit in the form of a $250,000.00 secured overline of credit. (Stip. ¶

21.)  On May 8, 1998, the terms of the original line of credit were again amended to reflect an increase in the principal sum due under the line from $2 million to $3 million.  (Compl. ¶ 24.)

Plaintiff and Kertesz signed a letter of indemnity dated November 12, 1998 ("Indemnity Agreement").  (Stip. ¶ 22.)  The Indemnity Agreement referenced a "certain Guaranty, dated as of May 8, 1998 made by you to Lafayette Bank."  (Pl.'s Mot. Ex. B.)  It also stated that GVC would indemnify Kertesz for all amounts he actually paid under the Guaranty, and to the extent that GVC failed to indemnify him, Plaintiff would indemnify Kertesz under the Guaranty.  (Pl.'s Mot. Ex. B.) Plaintiff alleges that prior to May 8, 1998, Kertesz never requested nor did Plaintiff provide any letter of indemnity.  (Compl. ¶¶ 25-27.)  Moreover, Plaintiff alleges that the Indemnity Agreement was provided in connection with the May 8, 1998 loan documents only.  (Compl. ¶ 28.)

However, Defendants claim they were adamant in not wishing to sign the initial personal guaranty on September 26, 1997.  (Answer, Document No. 11, ¶ 22.)  Defendants claim that Plaintiff verbally agreed to indemnify and guarantee their portion of the Note.  (Answer ¶ 22.)  Defendants allege that on April 7, 1998, when the Bank first extended and increased GVC's credit line, Plaintiff had already extended his agreement to indemnify Defendants. (Answer ¶ 23.)  Defendants also

3

claim that on that day, they asked Plaintiff to place his agreement to indemnify them in writing, though he failed to do so until November 12, 1998.  (Answer ¶¶ 23, 25.)

The parties agree that in February, 1998, Plaintiff and Kertesz executed an indemnity agreement whereby Plaintiff agreed "to indemnify, defend, and hold you harmless from and against any damage, liability, cost or exposure (including, without limitation, reasonable attorney fees) that you may incur as a result of your execution and delivery of the GIA Agreement."  (Stip. ¶ 20.)

On July 27, 2000, the Bank approved an extension of GVC's secured line of credit to $2.3 million.  (Stip. ¶ 28.)  However, the next day, the Bank amended its commitment letter, conditioning the extension of credit on Plaintiff increasing his personal guaranty to $800,000.00.  (Stip. ¶ 29.)  On August 31, 2000, Plaintiff agreed to increase the limit of his personal guaranty to $800,000.00.  (Stip. ¶ 30.) By its terms, this line of credit, as extended, had an expiration of December 31, 2000.  (Compl. ¶ 35.)

On January 5, 2001, the Bank advised Plaintiff and Kertesz that the scheduled December 31, 2000 payment was in default, but it agreed to extend both the line of credit and the quarterly payment to January 31, 2001.  (Stip. ¶ 32.) Plaintiff and Kertesz agreed with the Bank to extend the maturity of GVC's line of

credit on February 16, 2001 to June 30, 2001, and again on March 9, 2001 for an additional seven months. (Stip. ¶¶ 33-4.)

On August 1, 2001, the Bank declared GVC in default, and expressed its intent to pursue its remedies, including enforcement of Plaintiff's personal guaranty. (Stip. ¶ 38.) On August 31, 2001, the Bank confessed judgment against Plaintiff on August 31, 2001 in the amount of $831,461.59 and initiated litigation against Plaintiff in New York state court seeking to enforce its judgment. (Stip. ¶ 39.) The Bank also entered a confession of judgment against Defendants on the personal guaranty they had executed. (Stip. ¶ 40.) The Bank successfully forced a sheriff's sale of a portion of GVC's personal property and made attempts to force the sale of GVC's real property, scheduling that sale for June 13, 2002. (Compl. ¶ 42.)

On June 11, 2002, the Bank agreed to cancel the sheriff's sale of GVC's real property if Plaintiff (1) as a guarantor of GVC's loan, personally paid the Bank $150,000.00 to be applied against GVC's outstanding indebtedness; (2) paid certain outstanding real estate taxes with respect to GVC's real property; and (3) agreed not to contest the validity of his personal guaranty, which would be reduced to $400,000.00. (Stip. ¶ 42, 45.) Defendants were not signatories to this agreement. (Stip. ¶ 43.) Pursuant to this agreement with the Bank, Plaintiff paid

$150,000.00 to the Bank on June 12, 2002 (Stip. ¶ 44); $20,132.36 in outstanding real estate taxes on June 17, 2002 (Stip. ¶ 44); and signed a Non-Contestability Agreement, agreeing not to contest the validity of his personal guaranty of $400,000.00 on August 9, 2002 (Stip. ¶ 45).  Defendants were not signatories of the Non-Contestability Agreement.  (Stip. ¶ 46.)

Ultimately, the Bank, Plaintiff and Kertesz executed a Settlement Agreement, effective as of May 6, 2003, in which the Bank agreed to release and forever discharge Plaintiff, Kertesz and GVC from all claims related to the loan documents in question.  (Stip. ¶ 47.)  Likewise, Plaintiff and Defendants also agreed to release and forever discharge the Bank.  (Stip. ¶ 48.)

On December 6, 2006, Plaintiff filed a complaint seeking contribution from Kertesz and Mrs. Kertesz in an amount equal to their proportionate share of $170,132.36, the amount he paid under his personal guaranty, together with appropriate interest.  (Compl. ¶ 51.)  On April 9, 2007, Defendants filed their answer, including counterclaims based upon Plaintiff's refusal to indemnify Defendants.  The counterclaims included fraud, breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, and loss of consortium.  (Answer ¶¶ 66-107.)  Each of the six counts seeks an amount in excess of $75,000.00.  (Answer ¶¶ 78, 83, 88, 95, 105, 107.)  However, the parties have agreed to the dismissal

without prejudice of Count V, intentional infliction of emotional distress (Order, Document No. 23, May 25, 2007); Count IV, breach of fiduciary duty; and Count VI, loss of consortium (Order, Document No. 29, July 16, 2007).  This court denied Defendants' motion for summary judgment on Plaintiff's claim for contribution, but limited Plaintiff to seeking contribution on only $150,000.00.  (Order, Document No. 48, October 22, 2007).

Plaintiff now moves for summary judgment with respect to his claim of contribution, as well as Defendants' remaining counterclaims.

## II.  Standard of Review

A summary judgment motion should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56©.  In a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact is in dispute, *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986), and the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *see also Matsushita*, 475 U.S. at 587.

Once the moving party has carried its initial burden, the nonmoving party

"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. Discussion

Plaintiff is not entitled to summary judgment on his claim for contribution. However, with regards to Defendants' counterclaims, summary judgment will be granted in favor of Plaintiff on Count I, Fraud, and Count II, Breach of Contract (Representations), but not on Count III, Breach of Contract (Indemnification). Since Count IV, Breach of Fiduciary Duty, has already been dismissed without prejudice, Plaintiff's motion for summary judgment on this count is denied as moot. (Order, Document No. 29, July 19, 2007.) As explained in this court's October 22, 2007 Order, Pennsylvania law governs this dispute. (Order, Document No. 48, at 8.)

**A.     Plaintiff is Not Entitled to Summary Judgment on his Claim for**

## **Contribution.**

As there are genuine issues of material fact yet to resolved, Plaintiff is not entitled to summary judgment on his claim for contribution.  Plaintiff argues, and this court agrees that Pennsylvania law recognizes a right of contribution among co-guarantors or co-sureties.  (Order, Document No. 48, October 22, 2007.)  However, this court also ruled that Plaintiff is limited to seeking contribution on the $150,000.00 he paid directly to the Bank.  (Order, Document No. 48, at 12-5, October 22, 2007.)

Plaintiff states that "the applicable law, and the facts that are of record, plainly require a finding here that Mr. Korn is entitled to contribution from the Kerteszs for their proportionate share of the amounts that Mr. Korn paid to the Bank on his personal guaranty."  (Pl.'s Mem. Supp. Summ. J. 13.)  Plaintiff highlights that it is undisputed that he has paid in excess of $170,000.00 to the Bank, while Defendants have paid nothing.  (Pl.'s Mem. Supp. Summ. J. 13, fn. 3.)  Plaintiff argues that since it is "still further undisputed that the parties all guaranteed GVC's indebtedness...that under any definition of fairness, he has paid more than his appropriate share."  (Pl.'s Mem. Supp. Summ. J. 13, fn. 3.)  Thus, Plaintiff claims that as a matter of law, he is entitled to contribution from Defendants in the amount of their proportionate share of the sums paid to the Bank.

9

(Pl.'s Mem. Supp. Summ. J. 13, fn. 3.)

However, this court disagrees with Plaintiff's reading of Pennsylvania law with respect to the right of contribution.  The right of contribution requires that "the plaintiffs must have been legally liable to pay, and must have actually paid under compulsion and obligation, that for which both plaintiffs and defendant were equally liable." *S. Sur. Co., et al. v. Commercial Cas. Ins. Co., et al.*, 31 F.2d 817, 818 (3d Cir. 1929).

Plaintiff has failed to establish that there is no genuine issue with respect to the compulsory nature of his payment to the Bank.  A payment is compulsory if there is "a clear legal duty to pay which might have been enforced by judgment and execution." *Malone v. Stewart*, 83 A. 607 (Pa. 1912).  Thus, in order for a payment to be compulsory, it is not necessary that a creditor has either obtained a judgment, or brought suit to enforcement payment.  *Kerr's Estate*, 4 Pa. D. 696 (Pa. Orph. 1895); *see also* RESTATEMENT (FIRST) OF RESTITUTION § 85, cmt. h (1937). However, if the creditor did not bring suit, and the payor is seeking "contribution from another person equally liable, it is necessary for [the payor] to prove ...that his payment terminated or reduced a valid claim against such person." *Id.*; *see also A. Guckenheimer & Bros. Co. v. Kann*, 89 A. 807, 808 (Pa. 1914) (holding contribution justified when "one of several parties, who were liable upon a

common obligation to the bank, discharged that obligation for the benefit of all of them).

At the summary judgment stage, the moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita*, 475 U.S. at 585, fn.10.  Plaintiff has not advanced any arguments regarding how his payment to the Bank terminated or reduced a valid claim against Defendants.  Thus, Plaintiff has failed to satisfy his burden as movant, and is not entitled to summary judgment on his claim for contribution.

Moreover, even if Plaintiff was able to establish that his payment to the Bank satisfied this prerequisite, Plaintiff must still prove that he has paid more than his proportionate share.  The right to contribution "arises only when the payor has contributed more than his proportionate share and is limited to the proportionate share which the other should pay."  RESTATEMENT (FIRST) OF RESTITUTION § 82, cmt. b (1937); *see also Malone*, 83 A. at 607.  Yet, "where the balance of the debt still remains unpaid, [a] right to contribution does not entitle him to restitution which would bring his loss below that which he should pay if the claim of the creditor were fully discharged."  RESTATEMENT (FIRST) OF RESTITUTION § 85, cmt. e (1937).  The only exception to this rule is if by paying a sum less than the original common obligation, the payor secures a full release from the creditor for all of the

co-obligors.  Then the payor will be entitled to contribution, even if the amount

thus paid is less than what was originally his proportionate share.  RESTATEMENT

(FIRST) OF RESTITUTION § 82, cmt. b (1937).

 In other words, Plaintiff is only entitled to contribution if he has paid more

than his proportionate share of the original common obligation.  Here, Plaintiff

failed to address what exactly was the original common obligation, what was

Plaintiff's proportionate share of the same, and by how much Plaintiff's payment

exceeded that share.  Thus, there is a genuine issue of material fact as to the amount

of contribution, if any, Plaintiff is entitled to.

 In addition, Plaintiff has failed to establish that he qualifies for the exception

described above.  Plaintiff does not claim that his payment of $150,000.00 to the

Bank resulted in a full discharge of the original common obligation owed by

Defendants and him.  In fact, the facts of record seem to imply the exact opposite.[1]

Therefore, this court must view the facts "in the light most favorable to the party

opposing the motion," and assume that Plaintiff's payment did not result in a full

---

[1]According to the Joint Stipulation of Uncontested Facts, Plaintiff made his payment of
$150,000.00 to the Bank on June 12, 2002.  (Stip. ¶ 44.)  The purpose of that payment seems to
be the extension of "the maturity of GVC's outstanding indebtedness for a period of six months,"
rather than the full discharge of the parties' obligation to the Bank.  (Pl.'s Mot. Ex. D.)  It was
only on May 6, 2003, almost a year later, that the parties did sign a settlement agreement
discharging their obligation to the Bank.  (Stip. ¶ 47.)  Plaintiff does not claim that the settlement
agreement, and the resultant discharge of the parties' obligation, were in any way related to his
June 12, 2002 payment of $150,000.00.

discharge of the obligation owed by the parties. *Id.* at 587. Hence, Plaintiff has

failed to satisfy his burden for summary judgment.

### B. Count I of Defendants' Counterclaims is Barred by the "Gist of the Action" Doctrine.

Count I of Defendants' counterclaims must be dismissed, as it is barred by

the "gist of the action" doctrine. In Count I, Defendants assert a fraud claim

against Plaintiff, claiming that Plaintiff committed fraud when he made verbal and

written representations to Defendants that he would indemnify them as to their

personal guaranty to the Bank. (Answer ¶ 67.)

The "gist of the action" doctrine "is designed to maintain the conceptual

distinction between breach of contract claims and tort claims [by] preclud[ing]

plaintiffs from recasting ordinary breach of contract claims into tort claims." *eToll,*

*Inc. V. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The

difference between contract and tort claims lies in the fact that "Tort actions lie for

breaches of duties imposed by law as a matter of social policy, while contract

actions lie only for breaches of duties imposed by mutual consensus agreements

between particular individuals." *Id.* (*quoting Bash v. Bell Tele. Co.*, 601 A.2d 825,

829 (Pa. Super. 1992)). The *eToll* court held that the "gist of the action" doctrine

should bar "claims for fraud in the performance of a contract," as the alleged fraud

is then merely collateral to a contract claim for breach of contractual duties.  *Id.* at

20.

Here, all of the alleged acts of fraud arose in the course of the parties'

contractual relationship.  *Id.*  Moreover, Plaintiff's duty to indemnify Defendants

was created and grounded in the parties' contract.  *Id.*  Defendants' damages are the

type "which would be compensable in an ordinary contract action; thus, the claim

would essentially duplicate a breach of contract action."  *Id.* at 21.  Thus, this court,

like the court in *eToll*, finds that Defendants' "fraud claims are inextricably

intertwined with the contract claims," and are barred under the "gist of the action"

doctrine.  *Id.*

However, case law does suggest that a claim for fraud in the inducement of a

contract would not be barred by this doctrine, as "fraud to induce a person to enter

into a contract is generally collateral to (*i.e.*, not "interwoven" with) the terms of

the contract itself."  *Id.* at 17 (*quoting Foster v. Northwestern Mut. Life*, 2002 WL

31991114, 2002 U.S. Dist. LEXIS 15078 (E.D.Pa. July 25, 2002)).  However, in a

non-precedential opinion, the Third Circuit adopted the reasoning of the district

court in *Penn City Investments, Inc. V. Soltech, Inc.*, 2003 WL 22844210, 2003

U.S. Dist. LEXIS 22321 (E.D.Pa. Nov. 25, 2003).  *Williams v. Hilton Group PLC*,

93 Fed. Appx. 384, 386-7 (3d Cir. 2004).  The district court held that the "gist of

14

the action" doctrine barred a fraudulent inducement claim if the pre-contractual

statements that induced the claimant to enter into the contractual relationship

"concerned specific duties that the parties later outlined in the contract." *Penn City*

*Investments,* 2003 WL 22844210 at *3. The court found that fraud claims should

be dismissed if "they are either directly addressed by the contract, or so closely

related to the contractual relationship, that the dispute between the parties should

be resolved by exclusive reference to contractual principles." *Id.* at *4.

Here, Defendants claim that but for Plaintiff's representations of

indemnification, they would not have signed the personal guaranty. (Answer ¶¶

74-5.) Thus, Defendants state a fraud in the inducement claim. However, under

the reasoning above, Defendants still do not state a tort claim for fraud.

Defendants' fraudulent inducement claim is based upon pre-contractual promises

of indemnity, the exact duty the parties later contracted for in the Indemnity

Agreement. (Answer ¶ 85.) Defendants' fraud claims are directly addressed by the

parties' contract, and can only be resolved by exclusive reference to contractual

principles. *See Penn City Investments,* 2003 WL 22844210 at *4. Hence, this

court finds that Count I of Defendants' counterclaims is barred by the "gist of the

action" doctrine, and Plaintiff is entitled to judgment as a matter of law. Thus,

Count I will be dismissed with prejudice and judgment entered in favor of Plaintiff.

15

**C.    Count II of Defendants' Counterclaims Is Either Barred by the Pennsylvania Statute of Frauds or Duplicative of Count III.**

Count II of Defendants' counterclaims must be dismissed, as it either violates the Pennsylvania statute of frauds or is duplicative of Count III.  In Count II, Defendants assert that by his conduct of "entering into and executing the Indemnity Agreement, Plaintiff represented that he would indemnify Defendants" as to the personal guaranty Defendants made to the Bank.  (Answer ¶ 80.) Defendants claim that "Plaintiff breached the Indemnity Agreement by representing that he would indemnify Defendants when he in fact did not." (Answer ¶ 81.) Defendants title this count "Breach of Contract: Representations."  (Answer at 11.) However, it is unclear to what extent Count II is based upon Plaintiff's representations (*see* Answer ¶ 80), or the Indemnity Agreement itself (*see* Answer ¶ 81).  Defendants' response seems to imply that they are relying on both "Korn's <u>written</u> indemnification and the representations he made related to the written document."  (Defs.' Mem. Opposing Summ. J., Document No. 54, at 7, fn. 4 ("Defs.' Mem.")).  Regardless of what this claim is based upon, Plaintiff is still entitled to summary judgment in his favor on Count II.

A representation is defined as "a presentation of fact – either by words or by conduct – made to induce someone to act."  BLACK'S LAW DICTIONARY (8th ed.

16

2004).  To the extent that Defendants' claim is based upon Plaintiff's conduct or words, this court violates the Pennsylvania statute of frauds.  Pennsylvania's statute of frauds, in pertinent part, provides that:

> No action shall be brought...whereby to charge the defendant, upon any special promise, *to answer for the debt or default of another*, unless the agreement upon which such action shall be brought, or some memorandum or not thereof, *shall be in writing*, and signed by the party to be charged therewith...

33 P.S. § 3 (2007) (emphasis added).  Since agreements to indemnify call one person to answer for the debt or default of another, Pennsylvania law clearly requires such agreements to be in writing, and signed by the party from whom indemnification is sought.  Thus, there can be no contract and no claim for breach of contract based upon Plaintiff's conduct or words in the case at hand.  Hence, this claim is barred by Pennsylvania's statute of frauds to the extent it is premised on Plaintiff's conduct or words.

To the extent that Count II is based upon the contract itself, it is duplicative of Count III.  Counts II and III are between the same parties.  Moreover, both counts are breach of contract counts.  To properly plead a cause of action for breach of contract, there are three necessary elements: (1) the existence of a contract, including its essential terms; (2) breach of a duty imposed by the contract;

and (3) resultant damages. *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881,

884 (Pa. Super. 2000).  If Count II is based upon the Indemnity Agreement, then

both Counts II and III are premised on the existence of the same contract (Answer

¶¶ 81, 85), as well as a breach of the same duty (Answer ¶¶ 81, 86).  Logically, the

breach of the same duty imposed by the same contract will result in the same

damages.  Hence, Count II is duplicative of Count III to the extent it is premised on

the Indemnity Agreement.

Although the basis of Count II is unclear, if it is premised on Plaintiff's

representations, then the claim is barred by the statute of frauds.  If it is premised

on the parties' Indemnity Agreement, then the claim is duplicative of Count III.

Thus, this court finds that Plaintiff is entitled to judgment as a matter of law, and

Count II will be dismissed with prejudice and judgment entered in favor of

Plaintiff.

### D.   Plaintiff is Not Entitled to Summary Judgment on Count III of Defendants' Counterclaims, as Genuine Issues of Material Fact Remain.

As there are genuine issues of material fact yet to resolved, Plaintiff is not

entitled to summary judgment on Count III of Defendants' counterclaims.  In Count

III, Defendants assert that "the Indemnity Agreement provided that GVC will

indemnify Defendants for all amounts actually paid by Defendants under the credit

18

line, and to the extent that GVC failed to indemnify Defendants, Plaintiff will indemnify Defendants as to the credit line." (Answer ¶ 85.) Defendants claim that "Plaintiff breached the Indemnity Agreement by failing and refusing to indemnify Defendants regarding the credit line, despite Defendants' repeated requests that Plaintiff do so." (Answer ¶ 86.)

Plaintiff claims that the material modifications doctrine discharged any indemnity obligation he may have had to Kertesz. (Pl.'s Mem. Supp. Summ. J. 15-6.) Moreover, Plaintiff argues that under Pennsylvania's rules of contract construction, his agreement to indemnify Kertesz related only to the May 8, 1998 transaction, and not to any transaction preceding or proceeding it. (Pl.'s Mem. Supp. Summ. J. 14-5.) Finally, Plaintiff asserts that Kertesz never demanded payment from GVC, and thus failed to perform a condition precedent to Plaintiff's obligation to indemnify him. (Pl.'s Mem. Supp. Summ. J. 16-7.) Yet, as each of Plaintiff's arguments fail, he is not entitled to summary judgment on Count III of Defendants' counterclaims.

> 1.   The material modifications doctrine does not discharge
> Plaintiff's obligation to indemnify Kertesz.

Plaintiff argues that the significant changes in GVC's loan and his own personal guaranty excused him from performing under the November 1998

19

indemnity letter. (Pl.'s Mem. Supp. Summ. J. 16.)

Under the material modifications doctrine, a gratuitous surety will be discharged "by any material variation of the principal's contract without the surety's consent." *Plummer v. Wilson*, 185 A. 311, 313 (Pa. 1936); *see also Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999); *Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. 1986).  However, a compensated surety is only discharged if the modification was made not only without the surety's consent, but also "substantially increased the surety's risk." *Id*.

Gratuitous sureties assume "obligations of suretyship or indemnity...without pecuniary compensation." *Barratt v. Greenfield*, 9 A.2d 188, 189 (1939).  Those "otherwise interested in the transaction leading up to the suretyship contract" are not gratuitous sureties. *First Nat. Bank of E. Conemaugh, to Use v. Davies*, 172 A.2d 296, 298 (Pa. 1934) (holding directors of a company to be compensated sureties).  Pennsylvania courts have held that when those who are both owners and officers of a corporation guarantee loans to that corporation, their status indicates they were compensated, and are not gratuitous sureties. *McIntyre Square Assoc. v. Evans*, 827 A.2d 446, 452, fn. 8 (Pa. Super. 2003) (*citing J.F. Walker Co., Inc. v. Excalibur Oil Group*, 792 A.2d 1269, 1274 (Pa. Super. 2002) (disagreeing that the sole shareholder of a corporation is "uncompensated" by a creditor extending a line

of credit to the corporation in exchange for the shareholder's guarantee)).

Moreover, the Third Circuit interpreted the principle of strictissimi juris, under

Pennsylvania law, as protecting only those "who entered into guaranty agreements

for reasons involving familial and neighborly affection and who did not profit

financially from the transaction." *Garden State Tanning, Inc. v. Mitchell Mfg.*

*Group, Inc.*, 273 F.3d 332, 336 (3d Cir. 2001).

Here, at the time Plaintiff guaranteed the Bank's loans to GVC, he was the

Chairman and majority shareholder of GVC, owning 68.42% of its stock.  (Stip. ¶¶

1-2.)  Thus, not only was Plaintiff "otherwise interested in the transaction leading

up to the suretyship contract," *Davies*, 172 A.2d at 298, but his status when

guaranteeing the loan also indicates that he was compensated.  *Evans*, 827 A.2d at

452, fn. 8.  Thus, Plaintiff is not a gratuitous surety and may only find relief under

the material modifications doctrine, if he can show that a modification to the

Bank's loan to GVC was (1) made without his consent; and (2) that modification

"has substantially increased [his] risk." *Continental Bank*, 510 A.2d at 729.

Plaintiff does not establish that his risk under the Indemnity Agreement was

ever substantially increased.[2]  Assuming that the November 1998 Indemnity

---

[2] Plaintiff's argument fails, because he cannot establish a substantial increase in his risk under the Indemnity Agreement due to material modifications to either the GVC loan or his own personal guaranty.  Thus, the court declines to determine whether or not the changes were made

Agreement had applicability beyond the May 8, 1998 transaction, the maximum

exposure of Plaintiff under that contract would be the maximum exposure of

Defendants under their personal guaranty signed September 26, 1997, or

$500,000.00.  Plaintiff does not assert that the changes to GVC's loan or those to

his personal guaranty ever exposed him under the Indemnity Agreement to a

greater risk than that $500,000.00.  (Defs.' Mot. Ex. F.)  Thus, within the context of

summary judgment, this court must infer that neither the changes to GVC's loan

nor those to Plaintiff's personal guaranty substantially increased at any time the

risk borne by Plaintiff under the Indemnity Agreement.  *Pennsylvania Coal Ass'n*,

63 F.3d at 236.  Hence, Plaintiff cannot establish that his obligations were

discharged as a matter of law, and summary judgment cannot be granted on this

ground.

> 2.    There is a genuine issue of material fact as to the construction of
> the Indemnity Agreement.

Plaintiff argues that under Pennsylvania rules of contract construction, the

clear and unambiguous terms of the indemnity agreement limit its applicability to

the May 8, 1998 transaction only.  (Pl.'s Mem. Supp. Summ. J. 14.)  In other

words, the November 1998 Indemnity Agreement does not cover the personal

---

with his consent.

22

guaranty signed by Defendants on September 26, 1997.  (Pl.'s Mem. Supp. Summ. J. 14.)  Furthermore, Plaintiff argues that when the May 8, 1998 transaction was later modified, the indemnity agreement became inoperative.  (Pl.'s Mem. Supp. Summ. J. 14-5.)  However, this court finds that the scope of the November 1998 Indemnity Agreement is a genuine issue of material fact for trial and declines to grant summary judgment on this ground.

Under Pennsylvania law, "it is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent."  *Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (citations omitted).  Thus, "when the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."  *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted).  However, when "an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances."  *Id.*

A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of more than one sense."  *Id.*  Whether ambiguity exists should not "be resolved in a vacuum.  Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a

23

particular set of facts." *Chester Upland Sch. Dist. v. Edward J. Meloney, Inc., et al.*, 901 A.2d 1055 (Pa. Super. 2006) (citations omitted).  It is the court's function "to decide, as a matter of law, whether the contract terms are clear or ambiguous." *Id.*

This court finds that the scope of the Indemnity Agreement is an ambiguous term.  The November 1998 Indemnity Agreement, in pertinent part, reads: "Reference is made to that certain Guaranty, dated as of May 8, 1998 made by you to Lafayette Bank."  (Pl.'s Mot. Ex. C.)  Yet, neither Plaintiff nor Defendants have produced a guaranty with such a date.  Thus, there is a latent ambiguity as to what exactly the Indemnity Agreement is referring.  (Stip. ¶ 37.)

Plaintiff argues that Kertesz's handwritten note on a copy of the Indemnity Agreement clearly indicates that Kertesz understood the limited applicability of the contract.  (Pl.'s Mem. Supp. Summ. J. 15.)  However, Defendants have produced another indemnity agreement between Plaintiff and Kertesz, as evidence of the parties' intent.  (Defs.' Mot. Ex. G; Stip. ¶ 20)  Moreover, Defendants claim that Plaintiff verbally assured them on multiple occasions that "he would fully indemnify them if in the event GVC defaulted on the Note and the line of credit." (Answer ¶ 27.)  Thus, Defendants have "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting FED.

24

R. CIV. P. 56(e)) (emphasis omitted).  Hence, summary judgment cannot be granted

on this ground.

3.     There is no condition precedent to Plaintiff's obligation to
indemnify Kertesz.

Plaintiff argues that "there is no evidence whatsoever that Mr. Kertesz ever

made any demand, whether written or oral, that GVC indemnify him pursuant to

the November 1998 letter."  (Pl.'s Mem. Supp. Summ. J. 17.)  Plaintiff claims that

as a result, Kertesz has failed to satisfy a condition precedent to performance, an

essential element of a claim for breach of contract under Pennsylvania law.  (Pl.'s

Mem. Supp. Summ. J. 17.)  However, this court finds that under the Indemnity

Agreement, Kertesz requesting indemnification from GVC is not a condition

precedent of Plaintiff indemnifying him.

A condition precedent is "a condition which must occur before a duty to

perform under a contract arises."  *Acme Markets, Inc. v. Federal Armored Express,*

*Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994) (citations omitted).  It is not necessary

for the parties to a contract to "utilize any particular words to create a condition

precedent, [however] an act or event designated in a contract will not be construed

as constituting one unless that clearly appears to have been the parties' intention."

*Id.*  Furthermore, "an event mentioned in a contract will not be construed as a

25

condition precedent unless expressly made such a condition." *West Develop.*
*Group, Ltd. v. Horizon Financial, F.A., et al.*, 592 A.2d 72, 76 (Pa. Super. 1991)
(citations omitted).

Here, this court declines to construe the Indemnity Agreement as including
the condition precedent urged by Plaintiff.  The November 1998 Indemnity
Agreement, in pertinent part, reads:  "This letter will confirm our understanding
that (1) the Corporation will indemnify you for all amounts actually paid by you
under the Guaranty and (2) to the extent the Corporation shall fail to so indemnify
you, Justin Korn will indemnify you under the Guaranty."  (Pl.'s Mot. Ex. C.)
Conspicuously absent is any language regarding how or when Kertesz should
demand payment from either Plaintiff or GVC.  Not only is there no language
making that a condition precedent to Plaintiff's duty under the contract, there is no
language requiring Kertesz to demand payment at all.  Thus, this court declines to
not only add a missing provision to the Indemnity Agreement, but also to construe
that provision as a condition precedent.

Moreover, "the purpose of any condition set forth in a contract must be
determined in accordance with the general rules of contractual interpretation."
*Acme*, 648 A.2d at 1220.  Thus, when "construing agreements involving clear and
unambiguous terms, this Court need only examine the writing itself to give effect to

26

the parties' understanding." *Id.*  Notably, the only language in the Indemnity

Agreement that modifies Plaintiff's duty to indemnify Kertesz are the words "to the

extent the Corporation shall fail to so indemnify you."  "If left undefined, the words

of a contract are to be given their ordinary meaning." *Kripp*, 849 A.2d at 1163.

Fail is defined as "to be deficient or unsuccessful; to fall short." BLACK'S LAW

DICTIONARY (8th ed. 2004).  Thus, the clear and unambiguous meaning of the

Indemnity Agreement is:  to the extent the Corporation falls short in indemnifying

Kertesz, Plaintiff would do so.  There is no provision limiting Plaintiff's duty to

indemnify Kertesz should the Corporation fall short, whatever the reason may be.

Hence, this court declines to read such a provision into the Indemnity Agreement.

As a result, this court finds that Kertesz need not have requested

indemnification from GVC to recover from Plaintiff under the Indemnity

Agreement.  Therefore, this court will not grant summary judgment on this ground.

### E.     Count IV of Defendants' Counterclaims Was Already Dismissed.

Plaintiff moves for summary judgment on Count IV of Defendants'

counterclaims, a claim for breach of fiduciary duty.  Plaintiff overlooks that this

court already dismissed that claim without prejudice pursuant to counsel's

stipulation.  (Order, Document No. 29, July 19, 2007.)  Thus, Plaintiff's motion for

summary judgment on Count IV of Defendants' counterclaims is denied as moot.

27

**IV. Conclusion**

Plaintiff is not entitled to summary judgment on his claim for contribution, as there are still genuine issues of material fact yet to be resolved. However, Plaintiff has shown that Count I of Defendants' counterclaims is barred by the "gist of the action" doctrine, and that Count II is either barred by the Pennsylvania statute of frauds or duplicative of Count III. Thus, Plaintiff is entitled to summary judgment on Counts I and II of Defendants's counterclaims. With respect to Count III, Plaintiff has failed to carry his burden in establishing that there are no genuine issues of material fact left to be resolved or that he is entitled to judgment as a matter of law. Thus, Plaintiff is not entitled to summary judgment on Count III. Finally, as this court already dismissed Count IV of Defendants' counterclaims, Plaintiff's motion for summary judgment on that count is denied as moot.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN KORN,<br>          Plaintiff,<br><br>          v.<br><br>EMERY KERTESZ, III and<br>SHEILA KERTESZ,<br>          Defendants. | CIVIL ACTION NO. 06-5340 |

## ORDER

**AND NOW**, this 6th day of November, 2007, upon consideration of "Plaintiff Justin Korn's Cross-Motion for Summary Judgment" (Document No. 46), and Defendants' response thereto, including a "Motion to Strike Plaintiff's Cross-Motion for Summary Judgment" (Document No. 54), it is hereby **ORDERED** that Defendants' motion is **DENIED**, and Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     Judgment is entered in **FAVOR** of Plaintiff and **AGAINST** Defendants on Counts I and II of Defendants' counterclaims;

2.     Plaintiff's motion for summary judgment on his claim of contribution and Count III of Defendants' counterclaims is **DENIED**; and

3.     Plaintiff's motion for summary judgment on Count IV of Defendants' counterclaims is **DENIED AS MOOT**.

**BY THE COURT:**

**/s/ Marvin Katz**

_____

**MARVIN KATZ, S.J.**